Magistrate Judge James P. Donohue

___ FILED ___ ENTERED
___ LODGED ___ RECEIVED

AUG 17 2018

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY ___ DEPUTY

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF JITESH BHOGAL | NO. MJ18-373<br><br>MOTION FOR DETENTION |

## I. Introduction

The United States by and through Annette Hayes, United States Attorney for the Western District of Washington, and Assistant United States Attorney, Bruce F. Miyake, respectfully requests that the fugitive in this case, Jitesh Bhogal ("Bhogal" or "the fugitive") be held without bond pending the hearing on the certification of his extraditability pursuant to 18 U.S.C. §§ 3181 et seq. In short, Bhogal should be detained because he cannot overcome the strong presumption against bail in international extradition cases. Specifically, he cannot meet his burden of showing that he poses no risk of flight and/or danger to the community, and that special circumstances exist warranting his release.

## II. Relevant Facts

On August 5, 2018, Jitesh Bhogal was charged in Ontario Canada with: (i) First Degree murder, in violation of Criminal Code of Canada § 235(1); (ii) Breaking and Entering into a Dwelling house, in violation of CCC § 348(b)(b); (iii) Sexual Assault, in

MEMORANDUM ON DETENTION/BHOGAL- 1
MJ18-373

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

violation of CCC§ 273(1); and (iv) Aggravated Sexual Assault, in violation of CCC § 246(a). On August 5, 2018, Justice M. Rawling of the Peace in the City of Windsor, Province of Ontario, issued a warrant for Bhogal's arrest.

Canada, through an extradition treaty, requested the United States assistance in obtaining a provisional arrest warrant for Bhogal who resides in the United States.

On August 16, 2018, based on a finding of probable cause, Magistrate Judge James P. Donohue of the Western District of Washington issued a provisional arrest warrant for Bhogal.

On August 17, 2018, Bhogal was arrested.

### III. The Legal Framework Of Extradition Proceedings

#### A. The limited role of the Court in extradition proceedings

The extradition process is *sui generis*. Extradition is primarily an executive function with a specially defined role for the Court, which is authorized by statute to hold a hearing at which it determines whether to certify to the Secretary of State that the evidence provided by the requesting country is "sufficient to sustain the charge." 18 U.S.C. § 3184. The Secretary of State, and not the Court, then decides whether the fugitive should be surrendered to the requesting country. 18 U.S.C. §§ 3184, 3186; *Prasoprat v. Benov*, 421 F.3d 1009, 1012 (9th Cir. 2005). "This bifurcated procedure reflects the fact that extradition proceedings contain legal issues peculiarly suited for judicial resolution, such as questions of the standard of proof, competence of evidence, and treaty construction, yet simultaneously implicate questions of foreign policy, which are better answered by the executive branch." *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997).

At the extradition hearing, the Court's role is limited to considering the requesting country's evidence and determining whether the legal requirements for certification of extraditability—as defined in the applicable extradition treaty, statutes, and case law— have been established. See *Quinn v. Robinson*, 783 F.2d 776, 786 n.3 (9th Cir. 1986) (citing *Charlton v. Kelly*, 229 U.S. 447, 461 (1913)) (analogizing extradition hearing to a

MEMORANDUM ON DETENTION/BHOGAL- 2
MJ18-373

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

preliminary hearing in a criminal case). If the Court finds that the requirements for certification have been met, it must provide the certification to the Secretary of State, together with a copy of any testimony taken before the Court, and must commit the fugitive to the custody of the U.S. Marshal to await the Secretary's final determination regarding surrender. 18 U.S.C. § 3184 (following certification, the extradition judge "shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made"); see *Vo v. Benov*, 447 F.3d 1235, 1237 (9th Cir. 2006); *Barapind v. Reno*, 225 F.3d 1100, 1105 (9th Cir. 2000).

### IV. Boghal should be detained.

Just as extradition hearings follow unique procedures, the determination of whether to release a fugitive on bail is also *sui generis*. The federal statutes governing extradition in the United States, 18 U.S.C. §§ 3181 et seq., do not provide for bail. Further, the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., does not apply because, as an extradition proceeding is not a criminal case. See *Kamrin v. United States*, 725 F.2d 1225, 1228 (9th Cir. 1984); *In re Extradition of Perez-Cueva*, No. 16-0233M, 2016 WL 884877, at *1 (C.D. Cal. Mar. 7, 2016). Rather, case law provides that bail should be granted in an extradition proceeding "only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory." *United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986) (quoting *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909) (Hand, J.)).

**1. Applicable Law.**

It is well-settled there is a presumption against bail in an international extradition proceedings and only "special circumstances" will justify bail. *Wright v. Henkel*, 190 U.S. 40, 63, 23 S.Ct. 781, 786, 47 L.Ed 948 (1903); *Salerno v. United States*, 878 F.2d 317, 318 (9th Cir.1989). An extradition proceeding is not a criminal case which is why the Bail Reform Act of 1984 does not govern and its presumption in favor of bail is not a part of extradition proceedings. *Kamrin v. United States,* 725 F.2d. 1225, 1227-28 (9th Cir. 1984); *In re Extradition of Beresford–Redman*, 753 F.Supp.2d 1078, 1086

MEMORANDUM ON DETENTION/BHOGAL- 3
MJ18-373

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(C.D.Cal.2010). That is because the primary concern in an international extradition matter is to deliver the accused defendant to the requesting nation. *Matter of the Extradition of Nacif–Borge*, 829 F.Supp. 1210, 1213 (D.Nev.1993); *United States v. Hills*, 765 F.Supp. 381, 384–85 (E.D.Mich.1991).

In *Wright v. Henkel*, 190 U.S. 40, 62 (1903), the Supreme Court explained that when a foreign government makes a proper request pursuant to a valid extradition treaty, the United States is obligated to deliver the person sought after he or she is apprehended:

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

When, as here, a requesting country meets the conditions of the Treaty, the United States has an "overriding interest in complying with its treaty obligations" to deliver the fugitive. *In re Extradition of Garcia*, 615 F. Supp. 2d 162, 166 (S.D.N.Y. 2009); see also *Wright*, 190 U.S. at 62. It is important that the United States be regarded in the international community as a country that honors its agreements in order to be in a position to demand that other nations meet their reciprocal obligations to the United States. Such reciprocity would be defeated if a fugitive flees after being released on bond. See *In re Extradition of Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1306 (S.D. Fla. 2017) ("[O]ur Executive Branch has a vested interest in enforcing our own treaty obligations for fear that other treaty partners will refrain from doing so in the future. And a difficult but necessary measure in carrying out that responsibility is to secure a wanted individual and surrender him or her to the foreign jurisdiction.").

**2. There is a strong presumption in favor of detention.**

In light of the strong presumption against bail that the Supreme Court established in *Wright*, an international fugitive may not be released on bail unless he demonstrates,

MEMORANDUM ON DETENTION/BHOGAL- 4
MJ18-373

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that (1) he is neither a flight risk nor a danger to the community, and (2) "special circumstances" warrant his release. *See, e.g., In re Extradition of Antonowitz*, 244 F. Supp. 3d 1066, 1068 (C.D. Cal. 2017); *Matter of Extradition of Mainero*, 950 F. Supp. 290, 294 (S.D. Cal. 1996).[1] "This 'special circumstances' standard is much stricter than the 'reasonable assurance' of appearance standard made applicable to domestic criminal proceedings by the Bail Reform Act." *In the Matter of the Extradition of Kin-Hong*, 913 F. Supp. 50, 53 (D. Mass. 1996).

In evaluating a fugitive's risk of flight in the extradition context, courts have considered, among other things, the fugitive's financial means, ties with foreign countries, and incentive to flee based on the severity of the offense. *See, e.g., Martinelli Berrocal*, 263 F. Supp. 3d at 1304; *In re Extradition of Beresford-Redman*, 753 F. Supp. 2d 1078, 1091 (C.D. Cal. 2010) (finding that a "well-educated and sophisticated" fugitive facing serious charges in foreign country had both the "incentive and ability to flee" and therefore presented a flight risk); *In re Extradition of Patel*, 08-430-MJ-HUBEL, 2008 WL 941628, at *2 (D. Or. Apr. 4, 2008) (considering that fugitive, a physician, had "more than sufficient assets available with which to flee"). Crucially, the special circumstances inquiry is separate from considerations of danger to the community or risk of flight. *See, e.g., Perez-Cueva*, 2016 WL 884877, at *2 (special circumstances must exist in addition to absence of risk of flight). "Even a low risk of flight" is not a circumstance sufficiently "unique" to constitute a special circumstance. *Leitner*, 784 F.2d at 161; *see also Salerno*, 878 F.2d at 317-18 (lack of flight risk "is not a criteria for release in an extradition case"). Accordingly, a fugitive who poses a danger to the

---

[1] Several courts in this Circuit have required fugitives to meet this burden with clear and convincing evidence, reasoning that the presumption against bail in extradition cases justifies a heightened standard of proof, *see, e.g., In re Extradition of Patel*, 08-430-MJ-HUBEL, 2008 WL 941628, at *1 (D. Or. Apr. 4, 2008); others have applied a preponderance of the evidence standard, *see, e.g., Extradition of Santos*, 473 F. Supp. 2d 1030, 1035 n.4 (C.D. Cal. 2006). Other courts have found it unnecessary to resolve the issue because of the difficulty of satisfying either standard. *See, e.g., Perez-Cueva*, 2016 WL 884877, at *2.

MEMORANDUM ON DETENTION/BHOGAL- 5
MJ18-373

community or a risk of flight should be denied bail, even in the face of special circumstances. *In re Extradition of Siegmund*, 887 F. Supp. 1383, 1384 (D. Nev. 1995).

"Special circumstances must be extraordinary and not factors applicable to all defendants facing extradition." *Mainero*, 950 F. Supp. at 294 (citing *In re Extradition of Smyth*, 976 F.2d 1535, 1535-36 (9th Cir. 1992)). Courts have considered and rejected a lengthy list of would-be special circumstances, including:

- The complexity of the pending litigation, *see, e.g.*, *United States v. Kin-Hong*, 83 F.3d 523, 525 (1st Cir. 1996);

- The fugitive's need to consult with an attorney and/or participate in pending litigation, *see, e.g.*, *Smyth*, 976 F.2d at 1535-36;

- The fugitive's character, background, and/or ties to the community, *see, e.g.*, *In re Extradition of Noeller*, No. 17 CR 664, 2017 WL 6462358, at *5 (N.D. Ill. Dec. 19, 2017); *Beresford-Redman*, 753 F. Supp. 2d at 1089; *Matter of Extradition of Sidali*, 868 F. Supp. 656, 658 (D.N.J. 1994);

- The fact that the fugitive may have been living openly, *see, e.g.*, *Leitner*, 784 F.2d at 160-61; *In re Extradition of Pelletier*, No. 09-mc-22416, 2009 WL 3837660, at *1, 3-4 (S.D. Fla. Nov. 16, 2009);

- Discomfort, special dietary needs, or medical concerns that can be attended to while incarcerated, *see, e.g.*, *In re Extradition of Noeller*, 2017 WL 6462358, at *8-9; *Martinelli Berrocal*, 263 F. Supp. 3d at 1301-02; *In re the Extradition of Kyung Joon Kim*, 04-cv-3886, 2004 WL 5782517, at *5 (C.D. Cal. July 1, 2004);

- U.S. citizenship or the pendency of naturalization or other immigration proceedings, *see, e.g.*, *Antonowitz*, 244 F. Supp. 3d at 1072; *Knotek*, 2016 WL 4726537, at *7; *In re Extradition of Orozco*, 268 F. Supp. 2d 1115, 1117 (D. Ariz. 2003);

- The fugitive's professional status, *see, e.g.*, *Pelletier*, 2009 WL 3837660, at *3-4 (allegedly well-respected businessman); *In re Extradition of Heilbronn*, 773 F. Supp. 1576, 1581-82 (W.D. Mich. 1991) (highly-trained doctor);

MEMORANDUM ON DETENTION/BHOGAL- 6
MJ18-373

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- The availability of electronic monitoring, <u>see, e.g., In re Extradition of Rovelli, 977 F. Supp. 566, 569 (D. Conn. 1997);</u>

- <u>Ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings,</u> see, e.g., <u>Salerno,</u> 878 F.2d at 318; <u>Antonowicz,</u> 244 F. Supp. 3d at 1070<u>; and</u>

- <u>The availability of bail for the same offense in the requesting country,</u> see, e.g., <u>Antonowicz,</u> 244 F. Supp. 3d at 1070<u>;</u> *Kyung Joon Kim,* <u>2004 WL 5782517, at *2;</u> *Siegmund,* <u>887 F. Supp. at 1386-87.</u>

While in certain exceptional cases some of the above may have been deemed a special circumstance, courts generally determine special circumstances to exist based on a confluence of factors, as opposed to any single consideration. Such findings are highly case-specific and within the discretion of the Court, mindful of the strong presumption against bail and future reciprocity of other countries at stake.

**3. Bhogal is a risk of flight and danger to the community.**

In this case, detention is warranted because Bhogal presents the risk of flight and his release creates a danger to the community.

**a. Flight.**

As an initial matter, a fugitive charged with crimes in another country is already by definition in flight or deliberately absent from that jurisdiction, and his evading prosecution in the foreign country indicates his risk of flight in the United States. Cf. *United States v. Botero*, 604 F. Supp. 1028, 1035 (S.D. Fla. 1985) ("In the context of determining whether a defendant poses a substantial risk of flight, this Court does not find any meaningful distinction between a person who left the country when he learned of pending charges and one who already outside the country refuses to return to face these charges. The intent is the same—the avoidance of prosecution.") (citing *Jhirad v. Ferrandina*, 536 F.2d 478, 483 (2d Cir. 1976)).

MEMORANDUM ON DETENTION/BHOGAL- 7
MJ18-373

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Here, the evidence indicates that Bhogal fled Canada immediately after murdering the victim, and thereafter abruptly ceased his travel habit to Canada. In Canada, he lied about his name, claiming it was "Bob." After returning to the United States, he drove two different cars and took steps to relocate from Michigan to Washington State – removing the Pilot SUV from Michigan after Canadian media mentioned a dark SUV's role in the crime, obtaining a Washington driver's license after shaving his beard and wearing blue contact lenses that conceal his brown eyes, and spending significant time outside Michigan.

Bhogal has the means to flee – he holds a Canadian passport, driver's licenses in two U.S. states, has at least two vehicles registered in his name, and is employed with a major automotive manufacturer as a Senior Design Release Engineer. His publicly available social media accounts, reveal that he maintains regular contact with friends and family abroad, including in India. Hence, further flight from the United States to yet another country, or to an underground location in the United States, is a reasonable assumption.

**b. Danger to the community.**

Given the serious nature of the alleged crimes, Bhogal's release also would pose a danger to the community here and abroad. Bhogal is facing some of Canada's most serious offenses – murder, rape, and breaking and entering. Each of these offenses carry a term of life imprisonment. The allegations indicate that Bhogal was using drugs and surreptitiously scaled an apartment building so he could enter a second story apartment where he killed a young woman who he did not know while the victim's nine year old son was present in the apartment.

The violent and random nature of the crimes, Bhogal's drug use, and his apparent efforts to evade law enforcement make Bhogal unpredictable and dangerous.

MEMORANDUM ON DETENTION/BHOGAL- 8
MJ18-373

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V. Conclusion

For these reasons, Bhogal should be detained pending the extradition proceedings.

DATED this 17th day of August, 2018.

Respectfully submitted,

ANNETTE L. HAYES
United States Attorney

BRUCE F. MIYAKE
Assistant United States Attorney

MEMORANDUM ON DETENTION/BHOGAL- 9
MJ18-373

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970